**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick D. Bailey, | CIV-13-1119-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Patrick D. Bailey's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on November 6, 2009, under protective filing date of August 25, 2009, alleging disability beginning October 24, 2006.[1] (Transcript of Administrative Record ("Tr.") at 24, 157-63.) His application was denied initially and on reconsideration. (Tr. at 98-112, 117-19.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 120-21.) A hearing was held on November 16, 2011, (Tr. at 54-97), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 21-37). The Appeals Council denied Plaintiff's request for review

---

[1] Plaintiff later amended his alleged onset date to December 24, 2006. (Tr. at 24.)

1   (Tr. at 1-7), making the ALJ's decision the final decision of the Commissioner.  Plaintiff then

2   sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1)  determine whether the applicant is engaged in "substantial gainful activity";

(2)   determine whether the applicant has a medically severe impairment or combination of impairments;

(3)  determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 24, 2006 – the alleged onset date.  (Tr. at 26.)  At step two, he found that Plaintiff had the following severe impairments: obesity, asthma, low back pain, sleep apnea, and post-gastric bypass surgery.  (Tr. at 26.)  At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations.  (Tr. at 26.)  After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant cannot climb ladders, ropes and scaffolds.  The claimant can occasionally climb ramps or stairs and occasionally balance, stoop, crouch, kneel and crawl.  The claimant can frequently handle and frequently finger with the right upper extremity.  The claimant should avoid concentrated exposure to extreme heat, irritants such as fumes, odors, dusts and gases and moving machinery and unprotected heights."[2]  (Tr. at 26-31.)  The ALJ determined that Plaintiff is unable to perform any past relevant work, but that considering Plaintiff's age, education, work experience, and residual

---

[2]  "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

1   functional capacity, there are jobs that exist in significant numbers in the national economy
2   that Plaintiff can perform.  (Tr. at 31-32.)

3       Therefore, the ALJ concluded that Plaintiff "has not been under a disability ... from
4   October 24, 2006, through the date of [his] decision."  (Tr. at 32-33.)

5                                    **IV. DISCUSSION**

6       In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh
7   medical source opinion evidence; (2) failing to properly consider his subjective complaints;
8   and (3) failing to accurately pose all of Plaintiff's limitations in the hypothetical to the
9   vocational expert.  Plaintiff requests that the Court remand for determination of benefits.

10  **A.      Medical Source Opinion Evidence**

11      Plaintiff contends that the ALJ erred by failing to properly weigh medical source
12  opinion evidence.  Specifically, Plaintiff argues that the ALJ improperly rejected the opinion
13  of treating physician Ted Faro, D.O., "in the absence of clear and convincing reasons for
14  doing so."

15      "The ALJ is responsible for resolving conflicts in the medical record."  Carmickle v.
16  Comm'r, Soc. Sec. Admin., 533 F.3d at 1164.  Such conflicts may arise between a treating
17  physician's medical opinion and other evidence in the claimant's record.   In weighing
18  medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three
19  types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
20  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
21  who neither treat nor examine the claimant.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
22  1995).   The Ninth Circuit has held that a treating physician's opinion is entitled to
23  "substantial weight."  Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.
24  2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  A treating physician's
25  opinion is given controlling weight when it is "well-supported by medically accepted clinical
26  and laboratory diagnostic techniques and is not inconsistent with the other substantial
27  evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2).  On the other hand,
28  if a treating physician's opinion "is not well-supported" or "is inconsistent with other

1    substantial evidence in the record," then it should not be given controlling weight.  Orn v.

2    Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

3         If a treating physician's opinion is not contradicted by the opinion of another

4    physician, then the ALJ may discount the treating physician's opinion only for "clear and

5    convincing" reasons.  See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830).  If

6    a treating physician's opinion is contradicted by another physician's opinion, then the ALJ

7    may reject the treating physician's opinion if there are "specific and legitimate reasons that

8    are supported by substantial evidence in the record."  Id. (quoting Lester, 81 F.3d at 830).

9         Since the opinion of Dr. Faro was contradicted by both treating and examining

10   doctors' opinions, as well as, other objective medical evidence, the specific and legitimate

11   standard applies.

12        Historically, the courts have recognized the following as specific, legitimate reasons

13   for disregarding a treating or examining physician's opinion: conflicting medical evidence;

14   the absence of regular medical treatment during the alleged period of disability; the lack of

15   medical support for doctors' reports based substantially on a claimant's subjective complaints

16   of pain; and medical opinions that are brief, conclusory, and inadequately supported by

17   medical evidence.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten

18   v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v.

19   Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

20        The ALJ considered the following objective medical evidence in his determination

21   of Plaintiff's residual functional capacity assessment.  Plaintiff was evaluated in January

22   2007 for complaints of back pain.  (Tr. at 418-38.)  Examinations revealed lumbar spine

23   tenderness, but also clear lungs; normal cardiac functioning; an obese but soft, non-tender

24   abdomen with normal bowel sounds and without masses; mild limitation in lumbar spine

25   ranges of motion; normal straight leg raise testing; normal deep tendon reflexes bilaterally;

26   and normal heel/toe walking bilaterally.  (Tr. at 418-38.)

27        Findings on follow-up examinations between February and April 2007 were similar.

28   (Tr. at 418-38.)  It was noted that Plaintiff was also being treated for obstructive sleep apnea

1   with a continuous positive airway pressure (CPAP) device and that the treatment provider

2   also recommended a lumbar spine MRI, which was performed shortly thereafter, revealing,

3   among other findings, disc protrusion at L5-S1 contacting a nerve root, but normal spinal

4   alignment.  (Tr. at 418-38.)

5       Plaintiff was examined again in March 2007.  (Tr. at 416-17.)  He reported that

6   physical therapy and medication were helpful for back pain.  Examination revealed an

7   unremarkable gait and the ability to walk on heels and toes.  (Tr. at 416-17.)

8       Navtej Tung, M.D., examined Plaintiff in May 2007 for complaints of back pain.  (Tr.

9   at 325-26.)  Examination revealed decreased lumbar spine ranges of motion, but also clear

10  lungs; normal cardiac functioning; normal hips; normal knees; negative straight leg raise

11  testing; normal deep tendon reflexes; normal motor functioning; normal sensory functioning;

12  and a normal gait.  Dr. Tung diagnosed lumbar spine degenerative disc disease with

13  radiculopathy and recommended lumbar spine medication injections, which he performed

14  in May and June 2007.  (Tr. at 231-50.)

15      Plaintiff was examined on two occasions in October 2007 for various complaints

16  including sleep apnea and shortness of breath.  (Tr. at 418-28.)  Plaintiff reported that his

17  back pain was significantly improved with recent spinal medication injections, and that his

18  breathing was fairly well controlled.  Examinations revealed clear lungs, but mild respiratory

19  distress due to obesity with decreased breath sounds and wheezing, and normal cardiac

20  functioning.  Plaintiff was diagnosed with obesity, asthma, obstructive sleep apnea with well

21  tolerated use of a CPAP device, and back pain with relief from spinal medication injections.

22  (Tr. at 418-38.)

23      Dr. Faro examined Plaintiff in December 2007.  (Tr. at 352-94.)  Plaintiff denied chest

24  pain, dyspnea, and abdominal pain.  Examination revealed that Plaintiff was alert and

25  demonstrated clear lungs and the absence of respiratory distress; normal cardiac functioning;

26  and an obese but soft, non-tender abdomen with present and equal bowel sounds and without

27  masses.  Plaintiff reported smoking cigarettes, which Dr. Faro advised him to discontinue.

28  (Tr. at 352-94.)

Dr. Faro continued treating Plaintiff through August 1, 2010, with similar examination findings and treatments. (Tr. 251-78, 347-49, 352-94.) During this period, Plaintiff reported that medication was helpful for pain. He also reported undergoing gastric bypass surgery in November 2008, losing weight, and improvement in back pain with weight loss. He further reported "using a lot of equipment at home," going on vacation, and driving out of state. Dr. Faro noted that Plaintiff lost significant weight. Lumbar spine x-rays were normal, and a lumbar spine MRI revealed a moderate disc herniation without impingement, spinal canal stenosis or foraminal narrowing at L5-S1, and minimal changes at other levels. (Tr. 251-78, 347-49, 352-94.) Notably, in February 2010, August 2010, and October 2011, Dr. Faro indicated that Plaintiff had significant physical limitations. (Tr. at 286-87, 350-51, 400-01.)

In August 2008, Plaintiff was examined for respiratory complaints. (Tr. at 352-94, 226-50.) Examinations revealed that Plaintiff was alert and ambulatory, and demonstrated shallow but clear, non-labored respiration; the ability to speak full sentences; normal cardiac functioning; normal extremity ranges of motion throughout; a soft, non-distended, non-tender abdomen; normal sensory functioning; normal muscles; and a normal gait. An electroencephalogram (ECG) was essentially normal, and chest x-rays revealed no evidence of acute cardiopulmonary disease. (Tr. at 352-94, 226-50.)

Plaintiff was examined again in December 2008. (Tr. at 251-78.) Plaintiff reported doing well; eating well; having good bowel movements; losing approximately 100 pounds; taking no medication; and he denied chest pain, dyspnea, and abdominal pain. Examination revealed that Plaintiff was alert and demonstrated clear lungs and the absence of respiratory distress; normal cardiac functioning; a soft, non-tender abdomen without masses; and full joint ranges of motion throughout. (Tr. at 251-78.)

In April 2010, Plaintiff underwent a cardiac stress test, which revealed a normal ejection fraction and was negative for ischemia. Cardiac enzymes were negative, and Plaintiff also reported that his chronic back pain was relieved with medication. Medical providers encouraged Plaintiff to discontinue smoking, and released him in stable condition. (Tr. at 341-46.)

1    Quirino Valeros, M.D., a consultative physician, examined Plaintiff later in April
2  2010.  (Tr. at 288-94.)  Plaintiff reported a history of low back pain for which he took
3  medication; a history of gastric bypass surgery and losing approximately 160 pounds; and
4  a history of asthma for which to took medication.  He reported that he could drive an
5  automobile, and examination revealed that Plaintiff was alert; demonstrated clear lungs and
6  the absence of respiratory difficulty; normal cardiac functioning; an obese but soft abdomen
7  without hernia; normal lumbar spine flexion; normal hip ranges of motion; normal ankle
8  ranges of motion; normal straight leg raise testing; and a normal gait and ability to ambulate.
9  Dr. Valeros concluded that Plaintiff had mild functional limitations, and that he retained the
10  physical residual functional capacity to perform light work.  (Tr. at 288-94.)

11    Michael Brown, D.O., examined Plaintiff in November 2010, for a foster parent
12  physical and paperwork for adoption of his niece.  (Tr. at 352-94.)  Plaintiff denied chest
13  pain, dyspnea, and abdominal pain.  Examination revealed that Plaintiff was alert and
14  demonstrated clear lungs and the absence of respiratory distress; normal cardiac functioning;
15  a soft, non-tender abdomen with normal bowel sounds and without masses; and a normal
16  gait.  Dr. Brown concluded that Plaintiff's medical condition was stable, advised Plaintiff to
17  discontinue smoking, and completed forms (presumably approving adoption ability).

18    Dr. Brown examined Plaintiff again in February 2011.  (Tr. at 352-94.)  Plaintiff
19  reported that his chronic back pain was stable with medication.  Examination revealed clear
20  lungs, equal breath sounds, and the absence of respiratory distress; normal cardiac
21  functioning; and a soft, non-tender, non-distended abdomen with normal bowel sounds and
22  without masses.  (Tr. at 352-94.)

23    Plaintiff was examined in August 2011 reporting that he had lost approximately 180
24  pounds and no shortness of breath.  (Tr. at 402-13.)  Examination revealed that Plaintiff was
25  alert and demonstrated clear lungs; normal cardiac functioning; a soft, non-tender abdomen
26  with positive bowel sounds; normal joint ranges of motion throughout; and normal motor
27  strength bilaterally.  On follow-up examination in October 2011, Plaintiff denied shortness
28  of breath and chest pain.  Examination revealed that Plaintiff was alert and demonstrated

clear lungs; normal cardiac functioning; a soft, non-tender abdomen with positive bowel sounds; and normal deep tendon reflexes.  (Tr. at 402-13.)

In his evaluation of the objective medical evidence, the ALJ first addressed Dr. Faro's opinion, noting the multiple assessments concluding that Plaintiff cannot work.  (Tr. at 30.) After documenting Dr. Faro's findings, the ALJ determined that his treatment records do not support the assessed limitations "as most of the physical examinations Dr. Faro conducted on the claimant were normal."  (Tr. at 30.)  Specifically, the ALJ stated:

> For example, during a November 2008 office visit with Dr. Faro, the claimant exhibited no joint pain, stiffness, swelling, deformity, or redness. Neurologically, he exhibited no weakness, numbness, tingling, tremor, gait disturbance, dizziness, or syncope. (19F/33) He also exhibited no joint pain, muscle tenderness, edema, erythema, or laxity.  He had full range of motion of all joints with normal tone and mass.  He had some continuing low back pain and pain down his legs.  (19F/33)  Also, in December 2008, the claimant's physician released him to return to work as a truck driver with no heavy lifting.  (5F)

(Tr. at 30-31.)   The ALJ continued his discussion finding that the "objective medical evidence, test results and treatment records" do not support Dr. Faro's opinions.  In his analysis of Dr. Faro's October 25, 2011 Assessment of Ability to do Physical Activities, the ALJ stated that according to Plaintiff, Dr. Faro spent "approximately one hour asking questions and did a physical examination."  However, the ALJ notes that there are no treatment records associated with any physical examination.  The ALJ further found that although Plaintiff testified that he cannot grip with his right hand, Dr. Faro's assessment indicates that Plaintiff can use his right hand frequently.  (Tr. at 30-31.)  Lastly, the ALJ compares Dr. Faro's opinion with Dr. Brown's opinion finding inconsistencies. Specifically, the ALJ states:

> This opinion is also inconsistent with the treatment notes of Dr. Brown, the claimant's other treating physician.  Dr. Brown noted that the claimant was in good health. Upon physical examination by Dr. Brown, the claimant exhibited no joint pain, stiffness, swelling or redness.  Neurologically, he exhibited no numbness, tingling or tremor.  Gait was normal. (19F/11-12)  Accordingly, I am unable to assign any of Dr. Faro's medical source assessments great weight.

(Tr. at 31.)

1    Next, the ALJ discussed Dr. Valeros' opinion, which found that Plaintiff could
2   perform a reduced range of light work. (Tr. at 31.) The ALJ assigned "some weight" to said
3   opinion, yet giving Plaintiff every benefit of the doubt, found that a sedentary residual
4   functional capacity is more appropriate. (Tr. at 31.)

5    The Court finds that the ALJ properly weighed the medical source opinion evidence,
6   and gave specific and legitimate reasons, based on substantial evidence in the record, for
7   discounting Dr. Faro's assessments. The ALJ discredited the medical opinion due to
8   inconsistencies with Plaintiff's treatment record and the medical evidence as a whole, as well
9   as lack of supporting clinical findings. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041
10   (9th Cir. 2008) (finding the incongruity between doctor's questionnaire responses and her
11   medical records provides a specific and legitimate reason for rejecting the opinion); Connett
12   v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that
13   [the physician's] extensive conclusions regarding [the claimant's] limitations are not
14   supported by his own treatment notes. Nowhere do his notes indicate reasons why [the
15   physician would limit the claimant to a particular level of exertion]."); Tonapetyan v. Halter,
16   242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's
17   testimony because "it was unsupported by rationale or treatment notes, and offered no
18   objective medical findings to support the existence of [the claimant's] alleged conditions").
19   Therefore, the Court finds no error.

20   **B.   Plaintiff's Subjective Complaints**

21    Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence
22   of clear and convincing reasons for doing so.

23    To determine whether a claimant's testimony regarding subjective pain or symptoms
24   is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine
25   whether the claimant has presented objective medical evidence of an underlying impairment
26   'which could reasonably be expected to produce the pain or other symptoms alleged.' The
27   claimant, however, 'need not show that her impairment could reasonably be expected to
28   cause the severity of the symptom she has alleged; she need only show that it could

1   reasonably have caused some degree of the symptom.'" <u>Lingenfelter v. Astrue</u>, 504 F.3d

2   1028, 1036-37 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets this first

3   test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony

4   about the severity of her symptoms only by offering specific, clear and convincing reasons

5   for doing so.'" <u>Id.</u> at 1037 (citations omitted).   General assertions that the claimant's

6   testimony is not credible are insufficient.  <u>See</u> <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir.

7   2007).  The ALJ must identify "what testimony is not credible and what evidence undermines

8   the claimant's complaints."  <u>Id.</u> (quoting <u>Lester</u>, 81 F.3d at 834).

9        In weighing a claimant's credibility, the ALJ may consider many factors, including,

10  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

11  prior inconsistent statements concerning the symptoms, and other testimony by the claimant

12  that appears less than candid; (2) unexplained or inadequately explained failure to seek

13  treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

14  activities."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>see</u> <u>Orn</u>, 495 F.3d at 637-

15  39.[3]  The ALJ also considers "the claimant's work record and observations of treating and

16  examining physicians and other third parties regarding, among other matters, the nature,

17  onset, duration, and frequency of the claimant's symptom; precipitating and aggravating

18  factors; [and] functional restrictions caused by the symptoms ... ."  <u>Smolen</u>, 80 F.3d at 1284

19  (citation omitted).

20       At the November 16, 2011 hearing, Plaintiff testified that he had a back disorder

21  causing pain for which spinal medication injections, oral medication, and physical therapy

22  were effective.  (Tr. at 65-70, 73, 76-78.)  He also testified that he weighed at one time

23

24       [3]  With respect to the claimant's daily activities, the ALJ may reject a claimant's
25  symptom testimony if the claimant is able to spend a substantial part of her day performing
    household chores or other activities that are transferable to a work setting. <u>See</u> <u>Fair</u>, 885 F.2d
26  at 603.  The Social Security Act, however, does not require that claimants be utterly
    incapacitated to be eligible for benefits, and many home activities may not be easily
27  transferable to a work environment where it might be impossible to rest periodically or take
28  medication. <u>See</u> <u>id.</u>

1   during the period at issue 450 pounds, underwent gastric bypass surgery with weight loss and

2   increased activity, and currently weighed 269 pounds at 70 inches in height.  (Tr. at 62,

3   66-68.)  He further testified that he had sleep apnea for which he used a CPAP device at

4   night consistently, that had improved with gastric bypass surgery.  (Tr. at 72.)  He

5   additionally testified that during the period at issue, he had adopted a three-year old relative,

6   and had traveled out of state.  (Tr. at 79.)

7        Having reviewed the record along with the ALJ's credibility analysis, the Court finds

8   that the ALJ made sufficient credibility findings and identified several clear and convincing

9   reasons supported by the record for discounting Plaintiff's statements regarding his pain and

10  limitations.    Although  the  ALJ  recognized  that  Plaintiff's  medically  determinable

11  impairments could reasonably be expected to cause the alleged symptoms, he also found that

12  Plaintiff's  statements  concerning  the  intensity,  persistence,  and  limiting  effects  of  the

13  symptoms were not fully credible.  (Tr. at 27-31.)

14       In his evaluation of Plaintiff's credibility, the ALJ first referenced the objective

15  medical evidence and Plaintiff's treatment record, finding that the medical records and

16  various treatment notes do not confirm the limitations alleged by Plaintiff. (Tr. at 27-31); see

17  Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for

18  rejecting the claimant's subjective testimony.") (citation omitted); Batson v. Comm'r of

19  Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence

20  supporting claimant's allegations supported ALJ's finding that claimant was not credible);

21  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (evidence of "conservative treatment"

22  is sufficient to discount a claimant's testimony regarding severity of an impairment); Meanal

23  v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider Social Security disability

24  claimant's failure to follow treatment advice as a factor in assessing Social Security disability

25  claimant's credibility).  Specifically, as noted above, the objective medical evidence as to

26  Plaintiff's musculoskeletal and cardiovascular/cardiopulmonary functioning failed to support

27  Plaintiff's alleged symptoms and limitations; demonstrated that Plaintiff's back pain, asthma,

28  and sleep apnea were effectively controlled with medication/treatment; and, at one time,

1   indicated that Plaintiff was not on any medication at all.  Further, as set forth in the medical

2   records, the ALJ noted that Plaintiff was not compliant with prescribed physical therapy, and

3   was discharged from physical therapy after failing to return for follow-up visits.  (Tr. at 27-

4   31.)

5          Next, the ALJ discussed Plaintiff's daily activities.  (Tr. at 27-31.)  "[I]f the claimant

6   engages in numerous daily activities involving skills that could be transferred to the

7   workplace, an adjudicator may discredit the claimant's allegations upon making specific

8   findings relating to the claimant's daily activities."  Bunnell v. Sullivan, 947 F.2d 341, 346

9   (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35

10  (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than alleged).

11  Specifically, the evidence demonstrated that although Plaintiff complains of disabling

12  symptoms and limitations, he has described daily activities which reflect inconsistencies with

13  the other evidence of record, and are not limited to the extent one would expect.  As the ALJ

14  noted, Plaintiff reported that he cleans the house and does dishes including loading and

15  unloading the dishwasher, goes grocery shopping, feeds chickens and collects eggs, picks up

16  after his teenager and wife, exercises in the pool, drives, and can carry a sack of potatoes

17  about 50 feet.  (Tr. at 30.)  While not alone conclusive on the issue of disability, an ALJ can

18  reasonably consider a claimant's daily activities in evaluating the credibility of his subjective

19  complaints.  See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008)

20  (upholding ALJ's credibility determination based in part of the claimant's abilities to cook,

21  clean, do laundry, and help her husband with the finances); Burch v. Barnhart, 400 F.3d 676,

22  680-81 (9th Cir. 2005) (upholding ALJ's credibility determination based in part on the

23  claimant's abilities to cook, clean, shop, and handle finances).

24         In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's

25  allegations not entirely credible.  While perhaps the individual factors, viewed in isolation,

26  are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor

27  is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors

28  that led to the ALJ's decision.  The Court concludes that the ALJ has supported his decision

1  to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,

2  the Court finds no error.

3  **C.    The ALJ's Step Five Determination**

4          Plaintiff contends that the ALJ erred at Step Five by failing to accurately pose all of

5  Plaintiff's limitations in the hypothetical to the vocational expert.

6          If a claimant cannot perform his or her past relevant work, at step five of the disability

7  evaluation process the ALJ must show there are a significant number of jobs in the national

8  economy the claimant is able to do.  See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

9  1999).  The ALJ can do this through the testimony of a vocational expert or by reference to

10  the Commissioner's Medical-Vocational Guidelines (the "grids").  See id. at 1100-01;

11  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

12          An ALJ's findings will be upheld if the weight of the medical evidence supports the

13  hypothetical posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

14  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

15  therefore must be reliable in light of the medical evidence to qualify as substantial evidence.

16  See Embrey, 849 F.2d at 422.  Accordingly, the ALJ's description of the claimant's disability

17  "must be accurate, detailed, and supported by the medical record."  Id. (citations omitted).

18  The ALJ, however, may omit from that description those limitations he or she finds do not

19  exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

20          In the instant matter, because Plaintiff could not perform his past relevant work, the

21  burden shifted to the Commissioner to determine if there was a significant number of jobs

22  that existed in the national economy that Plaintiff could perform, considering his age,

23  education, work experience, and residual functional capacity.  See Valentine v.

24  Commissioner of Social Security Administration, 574 F.3d 685, 689 (9th Cir. 2009).  As

25  stated previously, the ALJ found that Plaintiff retained the residual functional capacity to

26  perform sedentary work with limitations.  Vocational expert testimony was then obtained as

27  to jobs Plaintiff could perform with his limitations.  The vocational expert testified that

28  considering an individual of Plaintiff's age, education, and work experience, with the

residual functional capacity noted above, a significant number of jobs existed in the national economy that Plaintiff could perform. (Tr. at 32, 86-88.) The vocational expert listed callout operator, telephone quotation clerk, and document preparer as examples.  The Court finds that the ALJ's hypothetical to the vocational expert captured the essentials of the ALJ's residual functional capacity assessment – which this Court has found to be supported by substantial evidence.  Therefore, the expert's response to the question constituted substantial evidence in support of the ALJ's finding that Plaintiff's could perform other work existing in the national economy.  See Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (hypothetical question need only include limitations supported by substantial evidence).  Accordingly, the Court finds no error.

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case.  Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 18th day of September, 2014.

Michelle H. Burns
United States Magistrate Judge